Civil action to recover on policy of automobile collision insurance.
These facts appear to be uncontroverted:
I. On 14 April, 1945, defendant being engaged in general liability insurance business in the State of North Carolina, and having H. A. White 
Sons as its agent in Greenville, North Carolina, authorized to issue in its behalf automobile insurance policies, issued through this agency and delivered to plaintiff Rossie M. Manning a certain policy of insurance on his certain automobile, against loss by collision, within the *Page 252 
life of the policy, with rider providing for "single interest" limit of liability as hereinafter shown:
The policy of insurance in question is captioned "STANDARD AUTOMOBILE POLICY," and sets forth on its face as "DECLARATIONS" in pertinent parts, the following:
"I. NAME OF INSURED — Rossie M. Manning . . . Except with respect to . . . mortgage or other encumbrance is the sole owner of the automobile, except as stated herein: Dickinson Ave. Branch, Guaranty Bank Trust Co.
"LOSS PAYEE: Any loss hereunder is payable as interest may appear to the insured and Dickinson Ave. Branch, Guaranty Bank Trust Co., Greenville, N.C.
"II. POLICY PERIOD: From April 14, 1945 to April 14, 1946.
"III. IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy, the company agrees to pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, sustained during the policy period, with respect to such and so many of the following coverages as are indicated by specific premium charge or charges:
"COVERAGES — LIMITS OF LIABILITY — PREMIUMS
B-1 COLLISION (or) UPSET Single Interest $4.00
"IV. DESCRIPTION OF THE AUTOMOBILE and facts respecting its purchase by the insured: 1939 — Oldsmobile, etc. . . . Actual cost when purchased including equipment — $800.00: Purchased April 1945 — Used — Encumbrance — $629.90 — Installment Payments — One . . . Due Date — 10/1/45."
Among the conditions shown on the printed form of the policy are these:
"3. LIMIT OF LIABILITY: . . . The limit of the Company's liability for loss shall not exceed the actual cash value of the automobile, or if the loss is a part thereof the actual cash value of such part, at time of loss nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, nor the applicable limit of liability stated in the declarations . . .
"5. PAYMENT OF LOSS: ACTION AGAINST COMPANY: Payment for loss may not be required nor shall action lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy . . . *Page 253 
"9. SUBROGATION: In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.
"11. CHANGES: Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy . . .
"16. DECLARATIONS: By acceptance of this policy the insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance."
Attached to and forming a part of the policy, besides another, is "Finance Form 4," entitled "INDIVIDUAL POLICY ENDORSEMENT — SINGLE INTEREST COLLISION COVERAGE," pertinent parts of which are as follows:
"1. Interest insured — Coverage Afforded — In consideration of an additional premium of $4.00, the policy designated above is extended to insure the interest only of Dick. Ave. Branch, Guaranty Bank Trust Company, who, for the purpose of this coverage, is the Insured, or assignees of the Insured, hereinafter called `Named Insured,' in the automobile(s) described in such policy against loss or damage, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, while the automobile is in the lawful possession of a retail purchaser or borrower under a bailment lease, conditional sale, mortgage or other encumbrance . . .
"3. Conditions Precedent to Liability: The Named Insured agrees, and it is a condition precedent to the attaching of the Company's liability for any loss under this Endorsement:
"(a) That on April, 1945 . . . the automobile was: 1. Sold by Lewis W. Herring, dealer, to Rossie M. Manning, retail purchaser, or 2. Pledged by ..........., Borrower, to the Named Insured, under a legally enforceable bailment lease, conditional sale, mortgage or other encumbrance, and the unpaid balance due from the Purchaser or Borrower at the time of execution of such bailment lease, conditional sale, mortgage or other encumbrance was $629.90 . . . due . . . 10/1/45; also.
"(b) That, at the date this Endorsement is effective, there are no payments more than thirty (30) days past due under any bailment lease, conditional sale, mortgage or other encumbrance covering the automobile also *Page 254 
"(c) That the Named Insured shall not make any loss settlement, except at its own cost, which may in any way prejudice the rights of the company without the written consent of the company previously given; also
"(d) That, in case of loss which is covered hereunder and when so requested by the company, the Named Insured . . . shall use all reasonable means for the . . . recovery of the automobile . . .; also
"(e) That the Named Insured shall notify the company promptly of any change in ownership . . .; also
"(f) That the Purchaser or Borrower has defaulted in payment; and
"(g) That the Named Insured has made all reasonable efforts to collect overdue payments, and, failing so to do, has repossessed the automobile; and
"(h) That the interest of the Named Insured, as hereinafter defined, has become impaired . . .
"4. Limits of Liability: The Company's liability for loss of or damage to any automobile insured hereunder shall not exceed the limits specified in such policy nor exceed the lowest of the following limits:
"(a) The cost of repair or replacement of the automobile; or
"(b) The actual cash value of the automobile at time of loss; or
"(c) The amount of any impairment of the Named Insured's interest as represented by the Purchaser's or Borrower's unpaid balance not more than sixty days past due less interest, insurance, finance and other carrying charges computed pro rata as of the date of loss . . .
"The Named Insured's interest shall be impaired when the value of the automobile at the time and because of loss is reduced to an amount less than the Named Insured's interest therein . . .
"This Endorsement is subject to the limits of liability, exclusions, conditions and other terms of such Policy which are not inconsistent herewith."
II. The indebtedness of plaintiff Manning to plaintiff Bank, referred to in the "Individual Policy Endorsement — Single Interest Collision Coverage" as above shown, is evidenced by his certain note payable to the Bank, dated 14 April, 1945, in the amount of $629.90, due 1 October, 1945, which expressly provides that the automobile in question is collateral security for payment thereof. This note bears endorsement of Floyd McGowan. On same date plaintiff Manning also executed to plaintiff Bank a chattle mortgage on the same automobile as security for same indebtedness.
III. The automobile, to which the policy of insurance relates, was damaged by collision with a mule on 4 August, 1945, — at which time no part of the note held by the plaintiff Bank was in arrears and no default thereon had then occurred. *Page 255 
Plaintiffs allege in their complaint in respect to other pertinent matters, that in the collision with the mule the automobile was damaged in excess of its salvage value in the sum of $229.90; that defendant was duly notified of said loss and damage and demand was made upon it for payment of the loss according to the terms and conditions of said policy, and defendant wrongfully denied liability in any amount and refused to pay any part of the loss and damage; that thereupon the plaintiff Manning, owner of the automobile, delivered same to plaintiff Bank, and, in order to reduce its damage as much as possible, it sold said automobile for $400.00 leaving a balance due and owing upon said note in the sum of $229.90, with interest from 1 October, 1945, for which due demand was made upon defendant; that plaintiff, at the time of the collision, had performed all of the conditions required of them in said policy; and that defendant by reason of matters and things therein set forth, is justly indebted to plaintiffs in the sum of $229.90 with interest. Plaintiffs thereupon pray judgment.
Defendant, answering, denies in material aspects the foregoing allegations. And, by way of further answer, and as bar to recovery by either of the plaintiffs, defendant avers, among other things: (1) That the "single interest collision coverage" endorsement insured only the interest of the Bank in the automobile described, — the purpose and effect of the endorsement, on the one hand, being to limit the premium paid by the Bank to $4.00, and, on the other hand, to limit the liability of defendant to the amount of loss and damage, if any, the Bank might sustain, to such amount, resulting from the damage to the automobile, as could not be recovered out of the security of said automobile and the plaintiff Manning, as maker of the note, and Floyd McGowan, the endorser.
(2) That the actual loss and damage to the automobile amounted to only $157.93, the cost of repair following the collision being fairly estimated at $190.43, including $32.50 cost of radiator not covered by the insurance policy.
When the case came on for hearing, the parties waived a jury trial and agreed that the court should find the facts and render judgment accordingly.
Plaintiff offered oral testimony tending to show these facts:
(1) That the automobile immediately before the collision was worth $800; that the dealer's ceiling price on it at that time was $873; that immediately after the collision it was worth from $350 to $400; that after the collision Manning, the owner, turned the automobile over to the Bank and the Bank sold it in September, as result of owner's efforts in procuring a buyer, for $400, and credited Manning's note with that amount. *Page 256 
(2) That when Manning, the owner, went to borrow money from the Bank, the Bank required him to have Mr. McGowan to endorse his note; and that Mr. McGowan called Mr. Wells, the cashier of the Bank, and "said be sure and get insurance on the car, and then he would not mind signing the note."
(3) That J. Roy Martin, admitted to be the adjuster for defendant, and sent by it "to adjust the collision in controversy," told Manning the owner, to turn in the automobile and if it were sold, the Company would then settle the rest of it; (Motion to strike — Denied — Exception) that Martin told Wells, the cashier of the Bank, to see what he could get for the automobile; that the cashier let him know the price of $400 before he accepted it; and that Martin authorized him to sell it.
(4) That Manning, the owner, does not own any real estate, but does own a small amount of personal property, consisting of house furnishings, farm utensils, etc., in aggregate amount of $400 to $450; that he is not worth anything in excess of his personal exemption; that the Bank has made written demand upon him for payment of balance of his note; and that he has not paid it because he could not.
Defendant, on the other hand, offered Adjuster Martin as a witness, and he testified in pertinent part as follows: ". . . I had occasion to investigate the claim involved in this particular lawsuit . . . I advised Mr. Manning that the policy provided no coverage as far as he was concerned, that the policy only provided coverage for the bank. He immediately became disturbed, stating to me that he got the impression from Mr. Wells, when he borrowed the money and when Mr. Wells ordered the insurance, that the insurance did cover his interest as well as the interest of the bank. I advised Mr. Wells and Mr. Manning both that it would be necessary to have estimate prepared as to the cost of repairing of the automobile in order that the insurance company might be advised of the extent of the damage and possible liability . . . I advised Mr. Wells that he should call on Mr. Manning to repair the car at his (Manning's) own expense and that he should exhaust all reasonable efforts to collect from Mr. Manning under the note held in the bank against the car. Later in the discussion of the matter, it developed that Mr. McGowan was endorser on the note held by the bank, and I immediately advised Mr. Wells that it would be necessary to proceed against Mr. McGowan if he was unable to collect from Manning the outstanding balance on the note. I reported the circumstances to the insurance company. There was no coverage under the policy until reasonable efforts had been made by the bank to collect from the purchaser and his endorser. At no time did I instruct Mr. Wells to sell the car for $400 or to accept $400 for it in its damaged condition. And neither did I tell him that the insurance company would pay the difference between the $400 and the amount due on the note, $629.90. I did tell Mr. Wells *Page 257 
that it was necessary to call on the purchaser and the endorser for any loss the bank might sustain on the note and, failing to recover from them, the maximum claim on the insurance company would be $157 and some cents. I arrived at the figures . . . by deducting the $32.50 expended by Mr. Manning in installing the radiator from the estimated cost to repair the car . . ." The witness continued on cross-examination: ". . . I asked Mr. Manning why he did not go ahead and finish the repairs to the car and pay his note on it. He stated that the insurance had been misrepresented to him, that he understood that the car was insured for his protection as well as for the protection of the bank and that it was that bank's loss and that he was not going to pay for it."
The witness further testified in respect of the estimate of cost of repairs.
The court found from the admissions of the parties and from the evidence appearing of record, these facts:
"(a) That the defendant Company issued its policy of insurance as appears in the record, and that thereafter a collision was had in which the insured automobile was damaged;
"(b) That notwithstanding the estimated cost ($190.43) to repair the damage to the said insured automobile, the said automobile was sold for the sum of $400.00 and that the full proceeds from the sale were applied on the partial discharge of the note executed by Rossie M. Manning and payable to Guaranty Bank Trust Company;
"(c) That the sale price of $400.00 as of September 1945, represented a fair and reasonable market value of the automobile at the time;
"(d) That the defendant Insurance Company, through its adjuster, fully authorized and directed to adjust the claim, and through its local agency, not only knew of the proposed sale of the automobile but authorized and approved the sale to be made for the aforesaid sum of $400.00, and thereby and in that respect waived its right to demand liability settlement under sub-section (a) of Section 4, of `Finance Form No. 4,' constituting a part `individual policy indorsement — single interest collision coverage;'
"(e) That after the application of $400.00, aforesaid, there remains still due and outstanding on said note a balance of $229.90; and
"(f) That the Bank's interest has been impaired by reason of said collision to the extent of $229.90."
"The court further finds as a fact that although the plaintiff Bank did not procure judgment against co-plaintiff Manning and cause execution to be returned either satisfied or `Nulla bona,' the Bank's failure so to do resulted from an investigation disclosing the insolvent condition of the said Rossie M. Manning, and the court finds as a fact that said Manning was insolvent at the time or times in question in the pleadings and still is insolvent, and that no enforcement of judgment then or now *Page 258 
obtained could be had under execution, and that plaintiff Bank made all reasonable effort to collect from the said Rossie M. Manning the balance due on said indebtedness prior to the time of the institution of this action, but failed to collect any part of same, and that there is still outstanding and unpaid on said indebtedness, evidenced by aforesaid note, the sum of $229.90."
"The court further finds that the Bank has not made any demand for payment upon Floyd McGowan, endorser of the Manning note."
Thereupon, the court entered judgment that plaintiff Bank recover of defendant the sum of $229.90 with interest and cost; and that "Upon the payment of this judgment the defendant Insurance Company shall have, and is hereby subrogated to, any right that the plaintiff Bank may have had against Rossie M. Manning, the maker of said note, and Floyd McGowan, indorser, and to any right of action which the said Rossie M. Manning may have against the owner of the mule involved in the collision referred to in the complaint, and shall execute and deliver requisite instruments and papers and do whatever else is necessary to secure such rights."
Defendant excepts to the judgment and appeals to the Supreme Court, and assigns error.
While all of the several assignments of error brought forward by appellant on this appeal have been considered, only one of them, the sixth, based upon defendant's tenth exception, merits any discussion.
The record shows that the tenth exception arose in this manner: Defendant requested the court to make certain findings of fact. Then this entry appears: "The court thereafter made the Findings of Fact incorporated in the judgment appearing in the record and thereupon signed and entered the judgment set out in the record, to which the defendant excepted." This constitutes no more than an exception to the signing of the judgment. Such exception challenges only the conclusions of law upon the facts found.Vestal v. Machine Co., 219 N.C. 468, 14 S.E.2d 427. It is insufficient to bring up for review the findings of fact or the evidence upon which they are based. If the judgment be supported by the findings of fact, it will be affirmed. Rader v. Coach Co., 225 N.C. 537,35 S.E.2d 609. However, while the exception does not challenge the sufficiency of the evidence to support the findings of fact, the record discloses evidence sufficient to support them. Hence, in the instant case no error is made to appear. *Page 259 
But it is contended by appellant that since the facts found show that the Bank has not made any demand upon the endorser for the payment of the balance due on the Manning note, it follows as a matter of law that it is a violation of the provisions of the conditions precedent to liability, — "that the named insured has made all reasonable efforts to collect overdue payments, and, failing so to do, has re-possessed the automobile." As applied to the case in hand, this contention is untenable.
At the threshold, the uncontradicted evidence tends to show that the endorser required the Bank to obtain insurance on the automobile as a condition upon which he would endorse the note. And defendant's evidence tends to show that defendant through the adjuster discovered that the note was endorsed.
Moreover, the Bank's interest is insured "against . . . loss . . . caused by collision of the automobile with another object." Hence, loss within the meaning of this provision was sustained when the collision occurred. At that time no part of the note had become due, and the Bank re-possessed the automobile. Under these circumstances, it may not be held as a matter of law that the failure of the Bank to demand of the endorser payment of the note was a failure to exercise "reasonable efforts to collect overdue payments." A policy will be construed most strongly against insurer, and all doubt and ambiguity will be resolved in favor of the insured. Jones v. Casualty Co., 140 N.C. 262.
The demurrer ore tenus entered in this Court is overruled. The allegations of the complaint are sufficient to state a cause of action.
It is appropriate to say that the extended statement as to provisions of the policy in question as above set forth reveals cause for confusion such as is manifested in this case. For instance, reading the policy, the first declaration is that the NAME OF INSURED is Rossie M. Manning. Next, under heading Loss PAYEE, it is seen that "any loss is payable as interest may appear to insured and" the Bank. Then further on, it appears that "limits of liability" for "Collision or Upset" is "single interest." Then as to single interest, the endorsement reads that "in consideration of an additional premium," "the policy designated above is extended to insure the interest only" of the Bank. Thus the policy, which on its face is for the benefit of the insured, the owner of the automobile, and the Bank, mortgagee, as their interests appear, is so limited by the endorsement that the owner of the automobile is denied any protection whatever, and the insurance company is relieved of liability to him. Moreover, in so far as the Bank, mortgagee, is concerned, a process of elimination must be followed throughout the endorsement to ascertain what liability to it the insurance company ultimately assumed.
The judgment below is
Affirmed. *Page 260